May it please the court, I'm Ed Rodriguez along with David Sheldon, Brian Shank, Mike Rose. We represent the appellant, Brigadier General Terry Schwalier. I reserve five minutes for rebuttal. This case presents significant questions concerning the records correction process for military officers. The purpose of this appeal is to reverse the district court's erroneous decision, erroneous as a matter of law, which if not corrected will undermine the 68-year-old military records correction system. Counsel, could you address kind of like a threshold question regarding whether your argument or your appeals barred by the statute of limitations? In order to have jurisdiction, you have to have, of course, the Tucker Act, but then you have to have a money mandating statute. In military personnel cases, usually the money mandating statute is the Military Pay Act. In order to take advantage of the Military Pay Act, the service member has to either be still on active duty or his separation from active duty has to have been found somehow improper or involuntary. In General Schwalier's case, when he retired on 1 September 1997, his retirement was voluntary. He could not bring himself within the money mandating statute of the Military Pay Act. The appellees concede that his retirement was voluntary. But when he retired, it was without his having been promoted to the major general position, right? He retired in his then grade of brigadier general. That's correct. So if we're talking about promotion and the entitlement to some sort of compensation with respect to the failure to promote, why doesn't that date back to the time at which he retired? Well, the thrust of his case is not that the denial of the promotion back in 1997 was wrong. The thrust of his case is that the procedures that were followed by the Department of Defense and then the Secretaries of the Air Force was wrong. That's what he's challenging here. The procedures in the correction board stops. That's right. I'm confused by this, myself a little bit. Where's the money mandating stuff from all of that, the provisions from that? The correction board rules aren't money mandating. If they award correction and the Air Force refuses to pay, then the money mandating is based on the refusal to pay the pay that he would have been entitled to. But I don't understand how you get a money mandating claim out of the correction boards and the ultimate decision by the Air Force not to order the promotion retroactively. There's some clarity needed here. First of all, the corrections board did not make any decisions. The corrections board on two occasions, in 2004 and in 2007, made recommendations. Now, the appellees would have you believe that all of the deciding was done at the corrections board level. Well, that might help actually clarify things. What's the decision here on appeal? It's the ultimate decision by the Air Force not to order his retroactive promotion, right? The decision on appeal here is the district court's decision. Well, I know. What decision by the Air Force are you challenging though? The challenged Air Force decision is when the secretary of the Air Force caved in to DOD lawyers and rescinded his mandate, which is called in the military the directive, to change his records. General Chevalier won twice. He won in the sense that he won in favor of – So the rescission of the corrections board's recommendation is the subject of your challenge below and your subject of your challenge today. Let me put it this way. Is there any – yeah, I think we can quibble about exactly how you described that, but I think that's what you're describing, right? What we're challenging here is the fact that the secretary of the Air Force, he should have stood his ground when DOD – I get that. So where does that decision, if reversed, mandate the payment of money? In 1552, C1, there's a condition precedent. It says that if a correction is made, at that point, if there's money due, it becomes due. And at that point, the secretary has no discretion. He has to – But the money due is his pay statute. Well, I'll tell you the money due. The money due is this. He was retroactively promoted to January 1, 1997. Let me – I think I'm probably confusing things unnecessarily. So let me tell you where I am. It seems to me that you filed an APA action of the district court, but you also included some language suggesting that this might be a little tucker act claim. And so you had those two things going on. And when it got to the D.C. Circuit, they transferred to us because they thought there was a little tucker act claim there. It seems that there was language to that effect. That seems to me to be time barred. But we're still left with this APA challenge to the rescission decision. So as a matter of jurisdiction, what do we do with that? Can we, even though we think the little tucker act claim is time barred, still go ahead and review the district court's decision on the APA claim? I don't believe that anything is time barred here. Well, assuming we disagree with you and we think the little tucker act claim is time barred, do we still have jurisdiction to review the APA challenge? Yes, you do. I mean, if the plaintiff or the appellant loses his tucker act case, that doesn't divest the court of its tucker act jurisdiction. But does it divest us of jurisdiction and mean it should go back to the D.C. Circuit? You know, that's this wasteful litigation that we've been caught up in. Well, I would agree with you on that. I'm just a little concerned whether because the little tucker act is not just a regular statute of limitations defense, it's a waiver of sovereign immunity. If we conclude that actually there was no little tucker act claim at all because it's barred, then the district court's jurisdiction would have been only under the APA, which I think you would agree would only be reviewable by the D.C. Circuit. Well, that's right. But whatever – what we need to do here – Let me ask you this. You're not – even if we find your claim – little tucker act claim time barred, you're okay with us going ahead and looking at the APA claim? We'd like to reach a decision on the merits. We didn't expect to be here. We're here now, and we welcome the challenge. In order to understand this case, I'd like to give you just a little recap. This case has a long history. I'd like to focus on just one chapter. I'd like to focus on the 2007 correction and appointment and the 2008 recession. In 1995, the president – I understand the facts of this case. Can I ask you a hypothetical? If instead of DOD general counsel coming in, which I think is your argument in telling the Air Force not to affect the correction board's decision, if the president himself had said, no, I don't want this person promoted, you wouldn't be here today, would you? Well, the president did say he didn't want this person promoted at one point in time. I'm asking you after the fact, after the corrections board decision, if this had come all the way up to the president and he said, I disagree with the correction board, I don't want this person promoted, I overrule the correction board, he's constitutionally entitled to do that, isn't he? Well, you're missing out a fact, and the fact that you're missing out is the fact that it wasn't the president that did this. It was his son. No, I know I'm asking you a hypothetical, though. If it had been the president that did this, you wouldn't be here because the president under the Constitution has the power to appoint officers. And if he says, no, I don't want this person appointed, the corrections board's decision isn't final. If the president were to inject himself at the point of the board's recommendation, but not at the point of the secretary's decision, I think you're right. But in this case, the secretary, acting as the delegee of the president, issued a directive, which is like a mandate, and he approved the recommendation to remove the injustice, and he thereafter had the Air Force issue an appointment order. Okay, let me – I don't think you're getting the gist of my hypothetical. Assuming that happens, the secretary approves the corrections board's decision. The president hears about that and says, no, I overrule the secretary and the corrections board. This person shall not be promoted. Can the president do that? The statute says that it is binding and conclusive on all officers of the United States. Doesn't that seem to create a constitutional problem? Congress can't take away the president's constitutional power to appoint officers, can they? It cannot. So at that point, even if the secretary had approved the corrections board's record, the president, acting in his constitutional capacity, could disagree with that and overrule it. He could disagree. That's correct. In this case, could the president's delegee in any sense do the same thing? Yes. And why isn't the general counsel of the Department of Defense sufficient? Because once the secretary of the Air Force approved the board's recommendation and issued the directive, the secretary of the Air Force, in effect, lost jurisdiction over the case, except for the administrative details to carry out the correction to issue the orders, a retroactive appointment order. But the logic of that would seem to imply that once the correction board made that decision, the president also would do it. Are you saying that – I mean, you answered my hypothetical the other way, that the president could clearly overrule the corrections board. Are you saying that because of the statute, it has to be the president, him or herself, instead of his or her delegee? What I'm saying is that in this case, well, to answer your question, if the president himself wanted to inject himself, we're probably out of luck. But that's not what happened here. No, I know, but I'm trying to – we're not just deciding your case. We're deciding an interpretation of the statute that could control other things in the future. And if we say that the correction board's decision is binding as a matter of law upon everybody except the president himself, then that has certain ramifications. And I don't understand why, if you agree that the president has constitutional authority, which I think you have to, to overrule the corrections board, that the president's delegee also has the constitutional authority to overrule the corrections board. But in this case, the president's delegee did not overrule – Well, so, okay, that's what I'm trying to get at because that seems to me to be the real thrust of this case is who can act for the president in this regard and can DOD overrule the Air Force. In this regard, the military department secretaries, all of them, have plenary authority to correct the records within their departments. You've said that in Strickland, and plenary means plenary, absolute, sweeping, comprehensive, broad. Subject to the president. Subject to the president. Could the secretary of defense overrule the secretary of the Air Force? No. Why not? Because the secretary of the Air Force has a pre-existing statutory authority. Let me ask this. If the president had issued formal instructions saying, in this correction board area, I delegate the secretary of defense final say over whether people should be promoted to be an officer. I think that that steps on the toes of Congress. Well, doesn't your interpretation step on the toes of the president's constitutional responsibility? Not in our case. Maybe in your hypothetical. But in our case, if the president has a beef, he has a beef with the secretary of the Air Force, and he can call him on the oval carpet and give him a chewing. And in essence, that's what happened because his delegee at the department of defense did that. I don't know about any chewing, but what happened here was that the secretary of the Air Force caved in. Now, I think they should have stood his ground. They have since 1946. Does it really matter? I mean, they did. So ultimately, there was no decision to promote. Well, ultimately, there was a decision to promote. What happened was when General Chauvier filed his application for a correction, and he filed two of them, by the way, and he won twice, the secretary of the Air Force adopted the recommendation of the corrections board. None of those decisions are the final decision of the agency that we're reviewing. The final decision we're reviewing is the Air Force's final decision not to promote General Chauvier, right? No, the final decision is not to promote. The final decision was to rescind, overturn, throw out. Right, and the result of that is he didn't get promoted. I know you're describing it one way, which seems more sympathetic. I don't really care about the language used to describe it. The ultimate result of that decision is he didn't get promoted, and that's what we're reviewing. No, we're not reviewing a promotion. We're reviewing the process that was followed to see whether it was proper or not in the adjudication of General Chauvier's. So, let me ask you. I'm way into your rebuttal. Let me ask you one more hypothetical. Okay. Does it really matter whether the procedures were followed or not if the president ultimately has the constitutional responsibility to decide who to promote? The president can violate those procedures all he wants, can't he? If there had been all of this give and take back and forth, and at the last minute the president stepped in at the right time, and there's a right time to step in, and there's a wrong time. But if it stepped in the right time, we're probably out of luck. But that's not what happened here. What happened here was that the Secretary of the Air Force had, since 1946, 1552A4, the final authority to decide records corrections. He decided in favor of General Chauvier, and the DOD General Counsel stepped in and took it away, and it should not have been taken away. Putting aside the authority of the president to step in into the process, it seems to me that your appeal at the end of the day is whether the Secretary acted arbitrarily or capriciously. Secretary acted what, sir? The Secretary of Defense acted arbitrarily or capriciously. Yes, that's right. And we believe that it is arbitrarily capricious. And that's the question you raised. You're not raising questions about the president's ultimate authority to withdraw a nomination. They acted arbitrarily and capriciously because this was the first time, and it's said so in the record, that DOD ever stepped in and upset a records correction process. This had never happened before. And the position of the Air Force has been consistent up to one point, and then after a certain point, after DOD General Counsel stepped in, they took a different tact and said, oh no, that shouldn't have happened. And they also play fast and loose with the facts. They have upset the order of this administrative process to get past the final and conclusive language of 1552A4. What they would like you to believe is that this – first of all, they'd like you to believe that this corrections board was a runaway board that needed to be controlled by the two secretaries who had to come together in an alliance to shut down what they didn't like this board was doing. The board only did what it could do in a kind of case like General Schwalier's. Because of the nature of the request – because of the nature of the relief that he sought, the board could only make a recommendation. Let me ask you a question, counsel. Now, so you're asking us to review whether the secretary's decision was arbitrary or precocious, but you don't oppose or you're not saying that the secretary doesn't have authority to make a decision in this case. Are you talking about the secretary of the Air Force or the secretary of defense? Defense. The secretary of defense has nothing to do with records correction except to approve the process, to approve the procedures. And he only got that role in 1951. And the reason that he got that role is between 1946 and – How about the secretary of Air Force? The secretary of the Air Force, he is the chancellor in these cases. He is the one who makes the decision whether to grant equity or not. And he operates under 1552A1 through a civilian corrections board. In some cases, the corrections board is, in fact, his delegee, and they do make decisions. Under 1552, the secretary of the Air Force has authority to correct the records? Absolutely. He is the only one, and he delegates that authority in some cases to the – But we're here to review whether he acted arbitrarily or capriciously. He acted arbitrarily and capriciously. That's the question you're asking us to review. That's right. And in this case, he acted arbitrarily and capriciously when he caved in to DOD general counsel and rescinded his directive, which granted the relief, all the relief that General Charlier had requested. He should not have changed his mind. Why not? If he's got authority to make the decision, why can't he change his mind? Well, the rule of law. What under 1552 says – The rule of law. Well – Let's take this panel, for example. Show me the authority, not rule of law. Show me under 1552 whether the secretary of the Air Force has the authority to rescind his decision. The secretary of the Air Force, once he's made a decision, he is like any other officer of the United States, and his own decision in that directive is binding and conclusive upon him, so he has to get it right the first time. And it's not like he's unaided with this thing. He's got attorneys – Where does it say in the statute that he can't change his mind? Nowhere does it say. It never – it doesn't say anywhere that he can't change his mind. Let's go back to Judge Hughes' questions. What if the president calls him and says, rescind that decision? If he has already issued that directive, I don't think that he can. That's – You don't think the president can direct – No. The secretary of the Air Force to not promote somebody? I don't think that the secretary – That reading of – Once it's been – this has got nothing to do with General Schwalier. The secretary of the Air Force had the actual authority, the apparent authority. He had the office. He'd been nominated. He'd been appointed. He'd been confirmed. He's the secretary of the Air Force, and he changed the general's records. And the secretary issued a directive making it so. Doesn't that reading of the statute suggest that Congress can limit the president's authority to appoint officers? Well, this is not an appointment. This was – well, it's an appointment. Of course it's an appointment. You conceded at the outset that he voluntarily retired at the lower grade, so he has to get a retroactive appointment. Well, that's true. But what I'm saying is that once the secretary of the Air Force has issued that directive and changed the record, the beef is no longer with General Schwalier. If the president is upset, he's upset with the secretary of the Air Force. General Schwalier has a right to rely upon what the secretary of the Air Force did. When he got his records correction, when he won his records correction, he achieved a benefit that was an enforceable obligation on the part of the Air Force. And the secretary of the Air Force at that point had no discretion to do anything but to carry out the directive, which was his own decision. And he carried it out by issuing an appointment order. In the second correction, unlike the first correction in the directive, he specifically removed the removal. And then he went on to issue retirement orders so that General Schwalier could retire in grade. All right. We're way beyond our time, and I'm not blaming you for that at all. But why don't we hear from the government? We're way beyond it. We'll give you two minutes to rebuttal. Thank you for your patience. Okay. And if it turns out you all need more time, we'll be done with that, too, to try to keep things even. May it please the court. Turning first to the question that Judge Hughes answered, there is a chain of command in our military. Before you get to that, I wanted to get to one of Judge Hughes earlier. And that is with respect to if we conclude that this is a statute of limitations problem with respect to the Little-Tucker Act claim, so all we've got left here is the APA claim. Is there any problem with ours continuing to have jurisdiction over this case? Pursuant to the case law and the decision of this court of banks be geared at 901 Fed Second 1084,  for just the reason that Your Honor recommended, for judicial economy, they would not want you transferring back to the D.C. Circuit the standalone APA claims. In banks be geared, it was a military case, wrongful discharge case, where the Little-Tucker Act claim was dismissed on statute of limitations grounds, but they had some equitable claims based on due process and maybe whistleblower at the same time. So I just want to be sure I understand. I mean, even if we agree with you on the statute of limitations on the Tucker Act claim, do you think we can still go ahead and look at the APA claim and affirm the district court if we want to, or reverse the district court on the APA claim? Yes, Your Honor. Especially in this case, well, banks makes that clear. I mean, that's a finding on this panel, it's a prior decision. The difficulty with these military pay cases, and it's difficult for the district court, is that the D.C. Circuit's case law sometimes is, you know, there's a lot of different nuances to it. In this case, the problem, though, because the decision of this court in Mitchell v. United States, which we said in our brief, it's sometimes when the equitable standalone APA claim is so inextricably intertwined with the money claim, as in here, or even in banks be geared, the wrongful discharge claim based upon Section 204 of Title 37 of the Military Pay Act, even if that was time barred, if it was based on, say, I was denied my due process, that still arguably is a wrongful discharge claim based on a constitutional error, so it should be time barred. But to answer all the questions and cut into the chase, banks be geared will allow you to do so. And we believe that this case is time barred. As far as the merits, we do believe that the Secretary of Defense has a role to play in monitoring all areas of the Department of Defense. We think it's quite clear in statute the Secretary of Defense is the alter ego of the President, and whether she or he makes any decisions, he or she is acting on behalf of the President. And the fact that the General Counsel provided advice to the Secretary of the Air Force to say, we think your decision to promote General Chevalier after the fact is ultra-virus, that has to be counseled. We cannot have the service secretaries ignoring the Department of Defense, because that would be undermining the very nature and the reason why the SECDEF was created. So if there's any subject to your questions, I think we answered everything in our brief. If it's not to the Court's satisfaction, subject to the questions, we'd ask that you affirm the judgment. Well, how would you interpret that language in the correction board statute that the decision is final on all officers of the United States? As we explained in our brief, we look at that as all the other departments. For instance, if in fact the DD Form 214 of the military is corrected to say the person received an honorable discharge, the VA would be bound by that, or Social Security, or some other administrative agency. But certainly in this case, Congress could not pass a statute that would undermine the authority that Congress has provided to the Secretary of Defense acting for the President. Because, for example, recently, the Secretary of Defense issued guidance to all the military services regarding how it should handle PTSD claims. Now, under plaintiff's theory, arguably the Air Force could ignore that guidance and go off on its own folly to review… Well, I don't think he's going that far. He's saying in the context of correction boards, not other instructions. Because the correction boards is the one that has the finality language. But in that case, Your Honor, the guidance that the Secretary of Defense provided last week was specifically to the corrections. Okay. So that's why I mentioned that as an example. But in this case, I think the military is one organization that we understand, as I said, there is a chain of command. It starts with the President. In order for the mission to be carried out in a uniform way where there's consistency of applications across the board, the court should not counsel plaintiff's theory that the Secretary of the Air Force stands alone in certain instances and can ignore the President's alter ego. Mr. President, does the Secretary of Air Force have authority under 1552 to change a decision or rescind a decision already made? Well, I'm assuming so because 1552 gives the authority to the Secretary to govern the board. So I don't think there's anything final until the Secretary can always review its decisions. There's nothing that I'm aware of that says to the Secretary, you specifically are precluded from doing so. And in fact, the record indicates that the Secretary in this case did just that. I think page 820 of the record shows that the Director of ABCMR says the records that we are being asked to correct are outside our purview. Arguably, the Air Force BCMR did not even have the authority to make those records corrections because General Cheyenne was properly removed in the first instance in 1997. And as we pointed out in our brief, they are not challenging that fact. So once an officer is removed from the promotion list, the only way that officer can be promoted again is through the nomination, confirmation, and appointment process. In this case, that never occurred. The BCMR simply did the appointment process, not ignoring those two first steps. So subject to your questions, we ask that the District Court's decision be affirmed. Thank you. With respect to the General Counsel's activity, there was more than advice here. On the 18th of January, 2008, he sent an email. The acting General Counsel sent an email to the DOD comptroller asking her to tell DFAS to shut down and not make any payments to General Schrawley based upon that correction. So there's more than just advice here. I want to go back just one more time to the importance, indeed the dignity, of the secretarial's directive. And I started to give you an analogy with this panel. Let's suppose that this panel decides a case. The appeal is handled. It's over. A mandate is issued. You've lost jurisdiction over the appeal. Six months later, you're having lunch. The three of you say, maybe we did the wrong thing there. Let's rescind that mandate. Well, that's, in effect, what you're saying that the Secretary of the Air Force can do. But we can do that if we want. You lose jurisdiction over the appeal once you issue the mandate. We can recall the mandate. Well, I think you get my drift. I think I understand what you're saying. There's that honor and dignity and rule of law attached to the decision by the Secretary of the Air Force under 1552. But it seems to me that that spreads out to all other agencies and departments. So there's finality. You have to have that continuity of predictability, finality within administrative agencies. But in this case, the Secretary made a decision to correct the records, and then he received an order from up above. And we've all agreed that when you get that order from up above, you respond. And so how does that change? I mean, you're going to have to convince me that the Secretary of the Air Force does not have authority to rescind a decision when he's directed by the President. Well, first of all, the language says all officers of the United States. It doesn't say other departments, other agencies, other bureaus. It says all officers of the United States. And as far as the Secretary's decision, once again, once he's made it, it's a done deal. He can't change it. He too is an officer, and he's got to get it right the first time. And it's not like he's there standing alone trying to weigh these things. He has the corrections board to give him advice. Under the corrections process, they can go out to any part of the Air Force and ask for advisories to help them decide the applicants. I don't understand that it's a done deal if his friend down the corner office in the Pentagon on South Law calls him and says, you need to change your decision. That's when he says it's a done deal, but not when the President calls. Well, the President didn't call in this case. Well, I think that in that case, the Secretary of the Air Force is in a real ethical pickle. And he needs to just either decide to resign or quit because he is under an obligation to stick by that directive once he has made it in favor of the service member. This is not the service member's fault. This has been a long-running dispute between DOD and the Air Force, and the record is replete with the parameters of disagreement that's gone on since 1997. In summary, Your Honor, we request that you reverse the district court's decision and remand it to that court so that appropriate orders can be entered that give General Cholier the full relief to which he is entitled and to which he won twice in the corrections system process. Thank you very much. Thank you. We thank both counsels. The case is submitted.